AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT
September 10, 2020
CENTRAL DISTRICT OF CALIFORNIA
BY: ___VM___ DEPUTY

United States of America

v.

CARLOS ESPRIU,

Defendant.

Case No. ~~20MJ4298~~
5:20-mj-00484

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of May 31, 2020, in the county of Riverside in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 844(i) | Attempted Arson of a Building Used in Interstate and Foreign Commerce and Used in Activities Affecting Interstate and Foreign Commerce |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*Dewey Stover*
Complainant's signature

Dewey Stover, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: September 10, 2020

[Judge's signature]
Judge's signature

City and state: Los Angeles, California

Hon. Michael R. Wilner, U.S. Magistrate Judge
Printed name and title

**AFFIDAVIT**

I, Dewey Stover, being duly sworn, declare and state as follows:

## I.  PURPOSE OF AFFIDAVIT

1.  This affidavit is made in support of a criminal complaint and arrest warrant against CARLOS ESPRIU ("ESPRIU") for a violation of 18 U.S.C. § 844(i): Attempted Arson of a Building Used in Interstate and Foreign Commerce and Used in Activities Affecting Interstate and Foreign Commerce.

2.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended merely to show that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II. BACKGROUND OF SPECIAL AGENT STOVER

3.  I have been a Special Agent ("SA") with the FBI since May 2016.  I am currently assigned to the Los Angeles Field Office, Riverside Resident Agency, Domestic Terrorism Squad, as part of the Inland Empire Joint Terrorism Task Force.  In this capacity, I investigate criminal violations relating to domestic terrorism and other violations of Title 18 of the United States Code, among other things.  I have received specialized training

in conducting criminal, weapons of mass destruction, and counter-terrorism investigations and have consulted with my colleagues who have many years of experience investigating criminal and terrorism crimes, including firearms violations and the use of destructive devices.

4. Since becoming an FBI SA, I have completed the International Firearm Specialist Academy's Firearm Specialist certification course, where I became trained to determine if an item is a firearm or destructive device, its official classification, and whether its possession, manufacture, or sale violates federal law. I have also completed the FBI Basic Post Investigator certification course, which is a comprehensive and field exercise training to identify, safely handle, reconstruct and analyze blast crime scenes and destructive devices, to include evidence.

### III. SUMMARY OF PROBABLE CAUSE

5. In the early morning hours of May 31, 2020, the East Valley Republican Women Federated ("EVRWF") office in La Quinta, California caught fire as a result of an arson. Video footage captured the incident, the perpetrator, and the perpetrator's car. EVRWF published a flyer with images of the perpetrator and offered a $1,000 reward for information. Three members of the community came forward to law enforcement, with two people identifying ESPRIU by name. Circumstantial evidence corroborates the identification of ESPRIU and, following the execution of search warrants, agents found dash camera recording from ESPRIU's car in which ESPRIU admitted to setting the fire,

and described how he did it and his efforts to elude law enforcement.  The FBI conducted a forensic analysis and determined that the item used to set the fire meets the federal definition of a firearm and destructive device.

### IV. STATEMENT OF PROBABLE CAUSE

6.   Based on my review of law enforcement reports, conversations with other state, local, and federal law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.   Law Enforcement Responds to a Fire**

7.   On May 31, 2020, law enforcement responded to reports of a fire at the EVRWF headquarters located at 78870 Highway 111, La Quinta, California, in Riverside County.  Investigators who were on the scene, including California Department of Forestry & Fire Protection Officer and FBI Task Force Officer Christopher Palmer ("TFO Palmer"), told me that they arrived to find the front windows to the EVRWF had been shattered, and a fire had been set inside.  Near the burn area, investigators found shattered and intact glass bottles that appeared to have been charred by fire.

8.   I have reviewed the EVRWF's security-camera footage and security-camera footage that the owner of a nearby restaurant provided to law enforcement.  I learned the following information from my review of the footage:

a.   At approximately 1:16 a.m. on May 31, 2020, a masked man approached the EVRWF and began swinging a metal bat at the EVRWF's front windows, shattering some of them.  The man

then dropped the bat to the ground and took out of his backpack a set of three clear bottles that had been taped or bound together.  There appeared to be liquid inside the bottles.  The man unscrewed the cap to one of the bottles and inserted into the bottle an orange rag.  He then pulled a green lighter from his right front pocket, lit the orange rag on fire, and threw the set of bottles through the broken windows of the EVRWF.  The man then grabbed the backpack and bat and ran away.

        b.    About ten seconds after the man ran away, the video shows a car pass the parking area in front of the EVRWF.  The car appeared to be a silver subcompact car with no front license plate and two different colored side-mirror covers — one silver and one black.

        c.    The man returned to the EVRWF about seven minutes after leaving.  Upon his return, the man ran up to the EVRWF with the metal bat, smashed more windows, and appeared to reach into the EVRWF to retrieve the taped bottles.  The man then carried the taped bottles and the bat away from the EVRWF and returned about thirty seconds later, carrying the bottles.  When the man returned this time, he was not wearing a mask, and his full face was visible to the security cameras.  When the man got to the front of the EVRWF, he reached inside of the broken EVRWF window and then threw the set of bottles inside with force.  A fire immediately ignited, and the man ran back to the silver subcompact car, got inside the driver's seat, and drove away.

        9.    I have reviewed reports written by officials with the FBI's Explosives Chemistry laboratory, who examined the glass

bottles found near the burn area at the EVRWF.  An explosives chemistry analysis of two of the glass bottles revealed residues of evaporated gasoline, an ignitable fluid.  Additionally, an FBI Explosives and Hazardous Devices Examiner determined that the device used to set fire to the EVRWF was an improvised incendiary device similar to a Molotov cocktail or fire bomb.

      **B.**    **The EVRWF Distributes a Reward Flyer and Information Comes In**

     10. On or about June 2, 2020, EVRWF circulated a $1,000 reward flier on social media platforms and local news outlets. I have reviewed the flyer, which included still photographs captured from the security camera footage and showed the suspect's face, body, and clothing.  The reward flyer asked community members to contact law enforcement if they recognized the person pictured in the flyer or information about the EVRWF fire.

     11. From my review of law enforcement reports and my discussions with TFO Palmer, I know that TFO Palmer spoke with people claiming to have information about the person pictured in the reward flyer.  One of the people identified ESPRIU by his full name and said he/she recognized ESPRIU because they used to work together.  This person and a second person identified the Instagram handle, or username, of the person they believed was the person pictured in the reward flyer (the "Instagram Account").  The second person also said he/she recognized the

person pictured in the flyer as "Carlos," but did not know the individual's last name.[1]

### C. Law Enforcement Investigates ESPRIU

12. I reviewed publicly available photographs on the Instagram Account page. Based on my review, the person shown in many of the Instagram Account photographs appears to be the same person who appears in the security-camera footage from the EVRWF fire. I also compared the Instagram Account photos and the security-camera footage with ESPRIU's official California Department of Motor Vehicles ("DMV") photograph, and I believe all three depict ESPRIU.

13. Based on my training and experience, I know that people who use more than one type of social media frequently use the same handle across multiple social media platforms. Accordingly, I searched the Instagram Account name for accounts on other social media platforms and found a Twitter account with the same handle (the "Twitter Account"). On the Twitter Account's public page, I saw a tweet, posted on May 28, 2020, three days before the EVRWF arson, stating: "I wanna go burn shit n get hit with tear gas".

14. Facebook, the parent company of Instagram, provided me with subscriber records for the Instagram account. The records showed a full phone number ending in 6644 (the "6644 number)." Subscriber records from AT&T, the carrier for the 6644 number,

---

[1] This second caller wished to remain anonymous. TFO Palmer also spoke with a third person who believed the person pictured in the flyer was named "Carlos Gonzalez." I, along with other law enforcement officers, investigated the surname "Gonzalez" and found that it was incorrect.

showed that the 6644 number was registered to ESPRIU at the same address as the address listed in ESPRIU's DMV record.  I also reviewed toll records for the 6644 number, which showed multiple outgoing telephone calls to three news outlets on May 31, 2020, the date of the EVRWF fire.

15.  Starting on or about June 3, 2020, law enforcement established surveillance at the address listed in ESPRIU's DMV record, which was the same address listed in ESPRIU's AT&T subscriber records.  On multiple days, law enforcement captured photographs of a silver Honda Fit, a subcompact car, with no front license plate, parked in at and near ESPRIU's address.  The car had side mirrors with different colored covers — one black and one silver.  The car had no rear bumper at the time.  The photographs also captured a person getting in and out of the car in front of ESPRIU's residence.  I reviewed those images and ESPRIU's appearance in surveillance photos was consistent with the appearance of the person captured in the security camera footage during the EVRWF fire, except that ESPRIU had appeared to have shaved his facial hair.

### D.    Law Enforcement Executes State Search Warrants

16.  On or about July 8, 2020, law enforcement executed state search warrants on ESPRIU's house, which he shares with family members, on his person, and on his car.  ESPRIU was present at the time and declined to make any statements.  Law enforcement found and seized the following items pursuant to the warrants:

        a.    Orange rags, consistent in appearance with the rags used as wicks for the Molotov cocktails on May 31, 2020;

        b.    In defendant's car, a green lighter that was consistent in appearance with the lighter used to light the Molotov cocktails on May 31, 2020;

        c.    In defendant's residence, clothing and shoes that appeared consistent with the clothing worn by the person captured in the security camera footage on May 31, 2020;

        d.    Kingsford lighter fluid in defendant's car;

        e.    Black nitrile rubber disposable gloves, consistent with those worn by the person captured in the security camera footage on May 31, 2020; and

        f.    Multiple digital devices, including an SD card inside of a dashboard camera in defendant's car, an iPhone, a MacBook laptop, and an external hard drive.[2]

17.    A subsequent search of the digital devices revealed, in part, numerous audio-video recordings dated on or about June 28, 2020, saved on the SD card inside of a dashboard camera in defendant's car.  I compared the voice in these recordings to the recordings from ESPRIU's Instagram Account.  The voices are consistent with one another.  Because these recordings came from the dash camera inside of the car registered to ESPRIU, and because the voice on the dash camera is consistent with the voice that appears in videos posted on ESPRIU's Instagram

---

[2] On or about August 6, 2020, the Honorable Douglas F. McCormick, United States Magistrate Judge for the Central District of California, issued a warrant to search these and the other digital devices seized pursuant to the state search warrant.

Account, I believe ESPRIU is the person speaking in the dash camera recordings. I also know that a portion of the dash camera video captures ESPRIU's face.

18. From my review of the dash camera recordings, I know that ESPRIU spoke with a female in his car on or about June 28, 2020, and said the following, in substance and in part:

 a. ESPRIU explained that he had to shave his beard because he was on the news. He explained that KESQ, a local news channel in California's Inland Empire, had reported on a person who tried to burn down a store in La Quinta.[3] ESPRIU said he made his Instagram page private when he saw his picture in the news.

 b. ESPRIU said he filled three glass bottles with gasoline, went "there," and began breaking windows with his bat. Then, ESPRIU said, he opened up one of the glass bottles, took out a towel, wet the towel, stuck it into a bottle, lit it on fire, and threw it. He said he then ran away but when he looked back, he saw that the flames had gone out. Seeing this, ESPRIU made a U-turn in his car and went back. When he returned ESPRIU said he smashed more windows and saw that gasoline had spilled all over the floor already. ESPRIU said he lit the floor and saw it catch fire. He also saw that two of the three bottles were still intact, so he threw them inside and watched them shatter. ESPRIU said he had forgotten to wear a mask when he went back.

---

[3] KESQ was one of the news stations that ESPRIU contacted on May 31, 2020 using the 6644 Number.

        c.    ESPRIU said he took the back bumper off his car to make his car look different from the car that appears in the reward flyer.

        d.    ESPRIU indicated that if he were apprehended, he would claim that law enforcement had injured him.

    **E.    Interstate Commerce**

19. I have reviewed recent sales receipts from the EVRWF. The receipts show that the EVRWF ships and receives merchandise into and out of California. For example, I reviewed a sales receipt showing that merchandise for sale at the EVRWF was originally purchased from a merchant located in Kansas and shipped in interstate commerce to the EVRWF office in La Quinta, California. I therefore believe that the building used by the EVRWF is a building used in interstate commerce and used in activities affecting interstate commerce, within the meaning of 18 U.S.C. § 844(i).

//

//

//

## V. CONCLUSION

20. For all of the reasons described above, there is probable cause to believe that ESPRIU has committed a violation of 18 U.S.C. § 844(i): Attempted Arson of a Building Used in Interstate and Foreign Commerce and Used in Activities Affecting Interstate and Foreign Commerce.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone this __10th__ day of
September, 2020.

_____
THE HONORABLE MICHAEL R. WILNER
UNITED STATES MAGISTRATE JUDGE